IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DAMIÁN ANNONI MESÍAS, *et al.*,

   Plaintiffs,

       v.

HOSPITAL HIMA SAN PABLO, *et al.*,

   Defendants.

CIVIL NO. 18-1988 (JAG)

## OPINION AND ORDER

GARCÍA-GREGORY, D.J.

    Before the Court is Defendants' Dr. Carlos M. Nieves La Cruz ("Dr. Nieves") and Centro Médico del Turabo, Inc. d/b/a Hospital HIMA San Pablo Bayamón's ("HIMA") (collectively, "Defendants") Motion for Judgment as a Matter of Law and/or Alternative Motion for a New Trial and/or Remittitur, Docket No. 100; Plaintiffs Damián Annoni Mesías and Roberto Annoni Mesías's (collectively, "Plaintiffs") Response in Opposition, Docket No. 106; and Defendants' Reply, Docket No. 113. For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

## BACKGROUND

    On January 31, 2020, a jury found Defendants jointly liable to Plaintiffs for emotional damages under Articles 1802 and 1803 of the Civil Code of Puerto Rico, P.R. LAWS ANN. tit. 31 §§ 5141-42. Docket No. 81. Specifically, it found that Dr. Nieves, who performed a coronary catherization on Plaintiffs' brother, José Annoni Mesías (the "Patient"), was "negligent" in doing so, and that "this negligence proximately caused [emotional] injury to plaintiffs . . . ." *Id.* The jury

**CIVIL NO.** 18-1988 (JAG)                                                                                                                   2

awarded $700,000.00 in compensatory damages—$350,000.00 for each Plaintiff. *Id*. On February 5, 2020, the Court entered judgment apportioning the award. Docket No. 86.[1]

On March 3, 2020, Defendants filed a Post Trial Motion for Judgment as a Matter of Law and/or Alternative Motion for a New Trial Under F.R.C.P. Rule 59[A][1][A] and/or for Remittitur. Docket No. 100. They contend that the Court should: (1) amend the judgment as a matter of law because Plaintiffs failed to satisfy their burden of proof;[2] or alternatively (2) grant a new trial because the verdict is contrary to the clear weight of the evidence presented; or (3) remit the award of damages because these were "shocking" and "excessive." *Id*. On March 23, 2020, Plaintiffs opposed, Docket No. 106; and on April 30, 2020, Defendants replied, Docket No. 113.

## ANALYSIS

I. **Judgment as a Matter of Law Under Rule 50**

Fed. R. Civ. P. 50 ("Rule 50") allows a party to move for entry of judgment as a matter of law during a jury trial. Such a motion may be granted "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). If the Court denies the motion, then "[n]o later than 28 days after the entry of judgment . . . [t]he movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b); *see also Taber Partners I v. Ins. Co. of N. Am., Inc.*, 917 F. Supp. 112, 115 (D.P.R. 1996). "[C]ourts may only grant a judgment contravening a jury's

---

[1] An amended judgment was later entered to correct damages award from $750,000.00 to $700,000.00. Docket No. 96.
[2] The petition before the Court is a renewed motion for judgment as a matter of law. Defendants initially made this request at trial, but it was denied in open court by the presiding judge, Hon. Judge Juan M. Pérez-Giménez (now deceased). Docket No. 116.

**CIVIL NO.** 18-1988 (JAG)                                                                                                         3

determination when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." *Monteagudo v. Asociacion de Empleados del Estado Libre Asociado*, 554 F.3d 164, 170 (1st Cir. 2009) (citations omitted). As part of this analysis, courts "may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence." 11 James Wm. Moore, MOORE'S FEDERAL PRACTICE 3D, 9 § 50.06[6][b], at 50-40 (2003).

In this medical malpractice case, Plaintiffs must establish three elements under Puerto Rico law: (1) the applicable standard of medical care; (2) that the medical personnel failed to follow the standard; and (3) a causal relation between the act or omission of the physician and the injury suffered. *Lama v. Borras*, 16 F.3d 473, 478-79 (1st Cir. 1994).

Here, Defendants essentially reallege the arguments presented in their first motion for judgment as a matter of law. Docket Nos. 115 at 3; 116 at 3. Specifically, they argue that the evidence presented in Plaintiffs' case-in-chief is insufficient to establish (1) whether the Patient was reasonably stable enough to undergo the "bridging therapy" prior to the catheterization, and (2) whether such therapy indeed constituted the appropriate standard of care for this type of patient. Defendants contend that in his trial testimony, Plaintiffs' expert—Dr. Andrew Selwyn ("Dr. Selwyn")—admitted (1) not finding "any mention of the 'bridging therapy' as the standard of care" in certain professional guidelines jointly admitted in evidence, and (2) "that the patient was at high risk [of] hemorrhagic bleeding" when intervened. Docket Nos. 100 at 11; 113 at 5.

Plaintiffs respond that the verdict is adequately supported, as "the jury sifted through the evidence and the various conflicting medical opinions and agreed with the plaintiffs' theory." Docket No. 106 at 4-5. Plaintiffs recall part of Dr. Selwyn's trial testimony saying that the Patient was stable, as his initial arrythmia "was controlled with medication," and that the standard of care

**CIVIL NO.** 18-1988 (JAG)                                                                                          4

prior to a coronary catheterization would have been to allow the Patient's measure of coagulation to normalize, then give him heparin and aspirin as "bridging therapy," which Dr. Nieves failed to do. *Id.* at 4.

After a careful and thorough assessment of the trial evidence and the Parties' motions, the Court finds that it should not disturb the jury verdict on liability. Contrary to Defendants' assertions, the record prevents the Court from concluding that Plaintiffs presented no evidence to make their case. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940) (pursuant to Rule 50, "motion for judgment cannot be granted unless, as matter of law, [plaintiff] failed to make a case.").

To prove medical malpractice, Plaintiffs presented the expert testimony of Dr. Selwyn, a cardiovascular physician with over 32 years of experience and a professor of Medicine at Harvard Medical School, Docket No. 23 at 22-23; and the testimony of Dr. Daniel Arzola, the Electrophysiologist who evaluated the Patient on December 29, 2016, Docket No. 91 at 57-70. Both doctors testified at trial on the relevant standard of care and the reasonable stability of the Patient, as well as Defendants' failure to comply with said standard, which they believe contributed to the Patient's death. Docket No. 90 at 52-55.

Furthermore, co-defendant Dr. Nieves and his expert witnesses all agreed in their trial testimony that the standard of care *for a stable patient* was to use the "bridging therapy." Docket No. 109 at 43, 46. To that effect, Dr. Selwyn and Dr. Arzola both agreed that the Patient was "reasonably stable" at the time of the intervention. Docket Nos. 90 at 7, 44-45, 54; 91 at 63. Even Dr. José Wiley, Dr. Nieves's expert witness, agreed that the Patient was "hemodynamically stable." Docket No. 109 at 7, 48, 50. The hospital record and various professional guidelines were presented to support the above.

**CIVIL NO.** 18-1988 (JAG)                                                                                          5

Such combined evidence, viewed in the light "most favorable to the nonmovant," *Espada v. Lugo*, 312 F.3d 1, 2 (1st Cir. 2002), is sufficient to satisfy the elements of a medical malpractice case. *Lama*, 16 F.3d at 478-79. As such, a reasonable jury could have weighted the evidence in Plaintiffs' favor, concluding that (1) the Patient's coagulation levels were reasonably stable enough, and (2) that Dr. Nieves deviated from the standard of care ("bridging therapy"), thus causing the Patient's death.

Most importantly, the jury assessed the credibility of Dr. Selwyn's trial testimony, in juxtaposition with that of the other expert witnesses. Even if the witnesses proposed adverse theories as to the standard of care or the Patient's stability, the jury ultimately sided with the theory proposed by Plaintiffs. On this note, it is worth repeating that "there may be substantial evidence on both sides, but it is the jury, by weighting the evidence and adjudicating the witnesses' credibility, who ultimately decided the issues here. The Court is not free to substitute its own views for those of the jury even if it were to agree with Defendants' position." *Velez v. Thermo King de P.R., Inc.*, 2011 WL 1261107, at *4 (D.P.R. March 29, 2011).

As such, Defendants' request for judgment as a matter of law under Rule 50 is **DENIED.**[3]

---

[3] Additionally, Defendants hastily invoke the "corporate responsibility" doctrine to argue that the jury was not "presented with evidence of independent liability of the Hospital." Docket No. 100 at 15. Such argument is meritless. Even if the "corporate responsibility" doctrine were to apply here, there is sufficient evidence for a reasonable juror to conclude that HIMA failed to adequately monitor Dr. Nieves, which resulted in not detecting the malpractice act. This would render HIMA liable. *See Marquez Vega v. Martinez Rosado*, 116 D.P.R. 397, 404 (1985). More importantly, under Puerto Rico law, a hospital can also be held vicariously liable for the physician's negligence when a person goes to the hospital for medical treatment and "the hospital 'provides' the physician who treats him," thus moving the Patient to entrust his health to the medical institution. *Id*. As per Defendants' own factual summary, Docket No. 100 at 5-7, this is exactly what happened here. Thus, a reasonable jury could have reached the verdict at hand.

CIVIL NO. 18-1988 (JAG)                                                                                                  6

## II.   New Trial Under Rule 59

Fed. R. Civ. P. 59 ("Rule 59") allows the Court to order a new trial "for any of the reasons for which new trials have heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a); *see also Taber Partners I*, 917 F. Supp. at 116. The motion may invoke the discretion of the Court "in so far as it is bottomed on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the [movant]; and may raise questions of law arising out of the alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co.*, 311 U.S. at 251.

The Court may grant a new trial even if it has denied the entry of judgment as a matter of law under Rule 50, *China Res. Prods. (U.S.A.) Ltd. v. Fayda Intern., Inc.*, 856 F. Supp. 856, 862 (D. Del. 1994); or even when substantial evidence supports the jury's verdict, *Lama*, 16 F.3d at 477. However, "a new trial should only be granted where a miscarriage of justice would result if the verdict were to stand, the verdict cries out to be overturned, or where the verdict shocks our conscience." *Oriental Fin. Grp., Inc. v. Fed. Ins., Inc.*, 598 F. Supp. 2d 199, 205 (2008) (quotations and citations omitted).

Here, Defendants argue that the "incompatibility between the verdict and the evidence warrants a new trial" and that the compensation "was more an award of punitive damages than a fair compensation." Docket No. 100 at 15, 30. Furthermore, they posit that because the amount awarded for Plaintiffs' emotional pain "is in no way supported by the evidence that was presented at trial, and in fact grossly exceeds the amount [a jury] could have awarded in a case such as this one without being excessive," the Court should, alternatively, remit the award. Docket No. 100 at 16.

**CIVIL NO.** 18-1988 (JAG)                                                                 7

Conversely, Plaintiffs contend that "the awards in this case have substantial basis in the evidence" and that "given the obvious suffering expressed and manifested by both plaintiffs at trial, the jury's award of $350,000.00 in compensatory damages to each of them cannot be said to be inordinate, grossly disproportionate, excessive or shocking to the conscience." Docket No. 106 at 10. To prove this, Plaintiffs refer to their own testimonies at trial and cite several federal cases that have previously granted comparable compensatory awards in similar medical malpractice cases.

As detailed in the previous section, *supra* part I, here the verdict as to liability is not against the weight of the trial evidence nor is it the result of an unjust trial. Thus, for the reasons articulated above, Defendants have failed to show that a new trial is warranted based on the insufficiency of the evidence. Likewise, the Court will not grant a new trial simply because the award may be overly excessive; under such scenario, the remittitur petition would be more appropriate.[4]

As such, the request for a new trial under Rule 59 is **DENIED**.

### III. Remittitur Under Rule 59

"[R]emittitur is defined as the process by which a court compels a plaintiff to choose between the reduction of an excessive verdict and a new trial." Moore, *supra*, 12 § 59.13[2][g][iii][A] at 59–82; *see also Marcano Rivera v. Turabo Med. Ctr. P'ship*, 415 F.3d 162, 171-73 (1st

---

[4] Under the "maximum recovery rule," the First Circuit has sometimes conditioned the ruling of a new trial on whether the winning party declines to remit a new calculation of damages. *See Trainor v. HEI Hosp., LLC*, 699 F.3d 19, 33 (1st Cir. 2012) (citing *Koster v. Trans World Airlines, Inc.*, 181 F.3d 24, 36 (1st Cir. 1999)); *see also Conjugal Partnership v. Conjugal Partnership*, 22 F.3d 391, 397 (1st Cir. 1994) (citing *Phelan v. Local 305*, 973 F.2d 1050, 1064 (2d Cir. 1992) and *Catullo v. Metzner*, 834 F.2d 1075, 1082 (1st Cir. 1987)) ("Under the practice of remittitur . . . the court may also condition the denial of a motion for a new trial on the filing by plaintiff of a remittitur in a stated amount . . . . The court must, however, hold out the option of a new trial.").

**CIVIL NO.** 18-1988 (JAG)                                                                                                          8

Cir. 2005). If the Court considers that a jury's verdict is excessive, it may condition the grant of a new trial on the victorious party's refusal to accept a reduced verdict. *Catullo v. Metzner*, 834 F.2d 1075, 1082 (1st Cir. 1987). Because remittitur directly interferes with the jury's prerogatives, courts limit its concession to situations in which the award is "shocking to the conscience." *Marcano Rivera*, 415 F.3d at 173 (citations omitted); Moore, *supra*, 12 § 59.13[2][g][iii] at 59–84. As such, "[r]emittitur is called for where an award is 'grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand.'" *Tuli v. Brigham & Women's Hosp.*, 656 F.3d 33, 44 (1st Cir. 2011) (citing *Acevedo–Garcia v. Monroig*, 351 F.3d 547, 566 (1st Cir. 2003)). "In reviewing an award of damages, the district court is obliged to review the evidence in the light most favorable to the prevailing party . . . ." *Wortley v. Camplin*, 333 F.3d 284, 297 (1st Cir. 2003).

Here, while the trial evidence supports the jury's liability determination, it does not support the award of $350,000.00 for each Plaintiff's emotional damages, *i.e.* mental pain and suffering. Not only is the evidence thin and anecdotal as to this respect, but it does not reflect a proper basis to award the aforementioned quantity. Hence, while the liability verdict does not shock the Court's conscience, the Court deems the damages award grossly excessive.

The evidence supporting the compensatory damage award consists solely of Plaintiffs' testimonies. Co-Plaintiff Damián Annoni Mesías testified, *inter alia*, that: (1) he talked to his decedent brother approximately three times a week; (2) that his brother, whom he misses, was like a father to him and provided advice in different aspects of his life; (3) that, upon learning of his brother's death, he came to Puerto Rico from Florida—where he resides since 2016; and (4) that he continues to suffer his loss. *See* Docket Nos. 100 at 27-28; 106 at 9-10. Co-Plaintiff Roberto

**CIVIL NO.** 18-1988 (JAG)                                                                                              9

Annoni Mesías's testimony was essentially the same except for the fact that: (1) he was planning to visit his brother before his death, (2) he lived in Florida since 2004, and (3) he used to talk to his brother "every day." *Id.*

However, these testimonies offer little specificity to support Plaintiffs' award for damages. Plaintiffs did not offer any testimony as to how the death of their brother impaired their daily lives or harmed them, other than causing the natural grieving process related to a loved one's passing. Instead, Plaintiffs merely base their claim on loose anecdotes and memories, for example, of when the three were children, when the Patient helped Plaintiffs move to Florida, or when he advised them on life issues such as raising their children. Docket No. 106 at 9-10. Plaintiffs further try to justify the damages award because they still grieve and miss their brother. *Id.* These sort of "anecdotal" or "self-serving" testimonies have been previously deemed "so thin" that they cannot withstand a remittitur petition against emotional distress awards. *See Trainor v. HEI Hospitality, LLC*, 699 F.3d 19, 32 (1st Cir. 2012).

To make matters worse, no medical evidence—or other evidence for that matter—was proffered to show that Plaintiffs received psychiatric or psychological treatment because of their brother's demise. *See Soto-Lebron v. Fed. Express Corp.*, 538 F.3d 45, 69 (1st Cir. 2008) (finding a $1,800,000.00 emotional distress award to be "shockingly exorbitant" where the "evidence did not include any expert psychological testimony and did not come close to establishing that he was disabled by his emotional injury.").[5] And while Plaintiffs allege having been surprised by their brother's death, the record shows that Plaintiffs' brother was a 51-year-old man that suffered from

---

[5] "While evidence from a physician or other mental health professional is not a sine qua non to an award of damages for emotional distress, the absence of such evidence is relevant in assessing the amount of such an award." *Trainor*, 699 F.3d at 32 (citing *Koster*, 181 F.3d at 35).

**CIVIL NO. 18-1988 (JAG)**                                                                                                   10

severe heart disease, underwent aortic valve replacement at a young age, and regularly took oral anticoagulation medicines (Warfarin or Coumadin) to prevent clotting of his mechanical heart valve. Docket Nos. 100 at 5-7; 106 at 1-2. Furthermore, after experiencing recurring symptoms in December 2016, he was diagnosed with Acute Coronary Syndrome and a Non-ST Elevation Myocardial Infarction, a form of heart attack. *Id.* Thus, Plaintiffs should have reasonably expected their brother's condition to worsen as he aged, even to the point of shortening his lifespan. This reality stands in sharp contrast to their testimony.

Having analyzed such factors, the Court finds that the damages award was "grossly disproportionate to any injury established by the evidence," even when they demonstrated that they miss and grieve their brother. *Koster v. Trans World Airlines, Inc.*, 181 F.3d 24, 34 (1st Cir. 1999). The Court recognizes that a "jury's assessment of the appropriate damages award is entitled to great deference," *Guzman v. Boeing Co.*, 366 F. Supp. 3d 219, 228 (D. Mass. 2019) (citing *Monteagudo*, 554 F.3d at 174); but the trial evidence here does not support such a large award for emotional damages.[6]

Accordingly, for the Court to determine an appropriate amount, it must conduct an exercise in which "[a]wards in comparable cases are instructive." *Aponte-Rivera v. DHL Sols. (USA), Inc.*, 650 F.3d 803, 811 (1st Cir. 2011). In diversity cases, the First Circuit has decided that federal courts are not obliged to apply state substantive law to award calculations; instead, courts use

---

[6] The Court is mindful that the undersigned did not preside over the jury trial in the case at bar. Nonetheless, even under a stricter remittitur standard, perhaps akin to appellate review of a remittitur, today's decision would still stand. The award here was, without a doubt, shockingly excessive. *See, e.g.,* Koster, 181 F.3d at 34 (a court of appeals "will not disturb an award of damages because it is extremely generous or because we think the damages are considerably less. [It] will only reverse an award if it is so grossly disproportionate to any injury established by the evidence as to be unconscionable as a matter of law.").

**CIVIL NO.** 18-1988 (JAG)                                                                                                  11

other federal cases to review jury awards. *Suero-Algarin v. CMT Hosp. Hima San Pablo Caguas*, 957 F.3d 30, 40-42 (1st Cir. 2020); *Marcano Rivera*, 415 F.3d at 172.

As such, the Court independently examined remittiturs and emotional damage awards upheld in similar cases in our Circuit. *See, e.g., Blinzler v. Marriott Intern., Inc.*, 81 F.3d 1148, 1161-62 (1st Cir. 1996) (affirming award of $200,000.00 for a spouse on account of her husband's death, where testimony was introduced as to how she personally watched him die and how she still suffers from medically-certified insomnia); *Correa v. Hosp. San Francisco*, 69 F.3d 1184, 1197-98 (1st Cir. 1995) (affirming an award of $100,000.00 for each heir on account of their mother's death, where expert testimony was introduced as to their depression—suffered in the wake of her death); *Suero-Algarin*, 957 F.3d at 40-42 (remittitur of emotional damages from $1,000,000.00 to $400,000.00 where plaintiff's only source of proving damages was his own testimony as to his father's untimely death); *see also Trainor*, 699 F.3d at 32-33 (remitting an already remitted emotional distress award from $500,000 to $200,000, because the evidence of emotional suffering was deemed "anecdotal", "self-serving", and "thin"); *Aponte–Rivera*, 650 F.3d at 811–12 (remitting emotional distress damages to $200,000 where employee, although experiencing distress and finding it hard to get a new job, did not introduce medical expert testimony, experienced no "outward manifestations of distress," and did not undergo long-term depression).

Except for *Suero Algarin*, where the court still remitted an emotional damages award to less than 40% of the original damages award (in the wake of a father's death), the referenced cases all provide emotional awards in the range of $100,000.00 - $200,000.00 for each plaintiff. In those cases, plaintiffs introduced medical evidence supporting their claims of emotional damage, or offered thorough, specific testimonies as to the emotional damages suffered. Such is not the case

**CIVIL NO.** 18-1988 (JAG)                                                                                           12

here, where Plaintiffs rely merely on their own, relatively vague, testimonies. They lack any medical or other evidence to support their emotional damages claims, which must be more than the ordinary grieving process after the loss of a sibling with lifelong heart conditions. These findings compel the Court to remit the award as it "exceeds any rational appraisal or estimate of the damages that could be based upon the evidence." *Trainor*, 699 F.3d at 29.

As such, "[i]t goes without saying that 'converting feelings such as pain, suffering, and mental anguish into dollars is not an exact science'. . . ." *Guzman*, 366 F. Supp. 3d at 228 (citing *Correa*, 69 F.3d at 1198). But after careful review of the record and similar cases, the Court finds that $400,000.00 ($200,000.00 for each Plaintiff) is the maximum award that can be justified based on the facts of this case. If Plaintiffs refuse to remit, a new trial will be held solely on the issue of damages.[7]

As such, Defendants' petition for remittitur is **GRANTED**.

## CONCLUSION

For the reasons explained above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Judgment as a Matter of Law and/or Alternative Motion for a New Trial and/or Remittitur. Docket No. 100. The Court remits the compensatory damages award against Defendants from $700,000.00 to $400,000.00 in total—$200,000.00 for each Plaintiff.

---

[7] Since the claims here—as to both liability and damages—are not "so intertwined as to confuse a jury if a new trial solely on damages" were conducted, the Court can simply limit the new trial to the issue of damages. *See Nieves v. Municipality of Aguadilla*, 2015 WL 3932461, at *11 (D.P.R. June 26, 2015); *see also Anthony v. G.M.D. Airline Servs., Inc.*, 17 F.3d 490, 496 (1st Cir. 1994)) (instructing the district court to allow plaintiff to choose whether to accept the remittitur offer or proceed with a new trial *solely* on the issue of damages).

**CIVIL NO.** 18-1988 (JAG)                                                                 13

      Plaintiffs shall inform the Court within thirty (30) days of entry of this Order if they will remit to the amount ordered above. If Plaintiffs refuse to remit, the Court will order a new trial be held solely on the issue of damages.

      IT IS SO ORDERED.

      In San Juan, Puerto Rico, this Wednesday, March 24, 2021.

**S/ JAY A. GARCIA-GREGORY**
JAY A. GARCIA-GREGORY
SENIOR U.S. DISTRICT JUDGE
